594

BANA, ET, Appellees, v PITTSBURGH PLATE GLASS CO., ET, Appellant.
ZUNI, Appellee, v PITTSBURGH PLATE GLASS COMPANY, ETC., Appellant.

Ohio Appeals, Ninth District, Summit County.

Nos. 3837 and 3838. Decided July 2nd, 1947.

Musser, Kimber and Huffman, Akron, for appellee.
Slabaugh, Guinther, Jeter and Pflueger, Akron, for appellants.

## OPINION

By HUNSICKER, J.

These appeals on questions of law were argued and submitted jointly by agreement of the parties, the cases having been consolidated and joined for the purposes of trial in the Court of Common Pleas.

Peter Zuni one of the appellees herein owns 37.6 acres of land lying between and adjacent to the Ohio Canal and the Tuscarawas River in Summit County Ohio near the Village of Clinton. This land is in two parcels 10 acres lies north of a 27.6 acre tract and is separated by lands owned by others than the parties hereto. Said 27.6 acre tract extends to the Summit County line and borders on the land of Mike and Susie Bana, appellees in Case No. 3838.

The Banas' own 36.59 acres in Stark County Ohio just south of the larger Zuni tract, which is similarly situated between, and adjacent to, the Ohio Canal and the Tuscarawas River, a natural running stream of water, which stream of water would periodically overflow and flood the lands of the appellees, depositing soil and silt on said lands.

The appellant The Pittsburgh Plate Glass Company. Columbia Chemical Division operates a soda ash and chemical plant several miles north of the lands of appellees, on Wolf

Creek which stream flows into the Tuscarawas river above the lands of the appellees. Some of the refuse from appellants manufacturing operations pass into Wolf Creek and thence into the Tuscarawas river. During the flood season in the spring the refuse filled waters of the Tuscarawas river cover the lands of the appellees and as a result thereof it is claimed said lands have been rendered worthless through chemical pollution.

The evidence shows that: these lands, which were very fertile now have such a high degree of alkalinity that farming and gardening is rendered impossible; trees now growing on a portion thereof are dying; the source of the pollution is appellant's factory; it would be economically impracticable to attempt to restore the fertility of the soil; the Bana lands have a small house and out buildings on it; the Zuni lands a small shed; there is no public highway affording ingress or egress to the lands; to enter the lands one must cross the land of others or pass along the tow path of the Ohio Canal owned by the State of Ohio.

The evidence as to value is conflicting, appellees testify that before the pollution the lands were worth $500.00 per acre and certain neighbors, non experts, whose testimony was objected to, assert the same value. Appellant introduced two witnesses one a former farmer and real estate salesman from a neighboring county, the other a public appraiser, who put the value as between $25.00 and $50.00 per acre before the pollution.

Zuni paid $300.00 for 10 acres in 1938 and between $500.00 to $600.00 for the 27.6 acres in 1927. The Banas paid $1,200.00 and some lands in Europe for their 36.59 acres. In an inventory of the estate of "Mathein Bana" deceased filed in the Stark County Probate Court in January 1946 the Bana lands were appraised for $2,000.00.

The jury returned a verdict of $5,000.00 for each of appellees and from the judgment rendered thereon appellant appeals assigning as error:—

1—The charge of the court on the subject of damages.

2—In allowing the verdict based on incompetent evidence and an erroneous charge to stand.

3—In refusing to grant appellant a new trial or reduce the verdict by a remittitur.

The Court after charging that the measure of damages "is the difference between its (the land's) reasonable and fair market value just before and just after it was injured or de-

stroyed, as shown by the evidence" then defined fair market value and continuing, said:

"Evidence as to the valuation of plaintiff's land for tax purposes should be wholly disregarded by you in fixing its said fair market value. Tax values and fair market values are not one and the same thing. Likewise with respect to appraisals made in connection with the administration of a decedents estate the market value of land is not controlled by such an appraisal."

Appellant asked the Court at the conclusion of the charge to charge on temporary and permanent injury and injury to a part and not to the whole of said lands. This the Court refused to do. Appellant then excepted to the charge telling the jury to disregard the valuation of the estate of the deceased former owner Mathein Bana and the failure to charge with respect to the residual value of the land. The Court thereupon recalled the jury for further instructions. The jury was again reseated and the Court charged as follows:

"In connection with what I have said to you about damages, I wish to make a further explanation and a correction. I told you that the market value of land is not controlled or fixed—of the Bana land—as contained in the inventory or appraisal which was filed in the estate of Mr. Bana's father; and I probably may have given you the impression to exclude such testimony. I desire not to exclude such testimony from your consideration, as it is a statement on the subject of the plaintiff Bana, and may be considered by you with all the other evidence on that subject in determining what the fair and reasonable market value of the land is.

"The purchase price of land does not control or does not fix its reasonable and fair market value. However, you may consider the testimony on that subject, together with all other testimony, in determining just what the reasonable fair market value of the specific land in question to have been."

Counsel for appellants again excepted to the charge of the court.

The question to be determined is, did the trial court fairly submit the rule of damages in this action for injury to real property?

In the case of **Coal Co. v Koontz, 5 Oh Ap 84** at page **88,** which was an action for injuries to lands by reason of pollu-

tion of a stream of water, the court say—"We further think that it is a sound principle of law that in an action for damages to real property testimony is admissible to show the exact character of the injury suffered * * * the measure of damages is the difference in value of the property before and after the injury * * * ." Nothing was said in this case about residual value the sole question was, what was the money value of the injury done.

In the case of **Upson Coal and Mining Co. v Williams, 7 O. C. C. (N. S.) 293**—(affirmed in **75 Oh St 644** without opinion) which was an action for injury to lands of a riparian owner caused by stream pollution the court held—Syllabus 1—"The measure of damages to a riparian owner, caused by the wash from mines poured into the stream above him, is the difference in the value of the land before and after the injury occurred, and not the depreciated rental value from the date of the occurrence of the injury, and· it is consequently competent for a plaintiff in such a case to prove the nature and extent of the injuries complained of and the amount of loss sustained."

Again nothing was said as to residual value of the lands and the sole question was, what was the money value of the injury done.

In the case of **Barberton v Miksch, 128 Oh St 169,** the original trial of which was in the courts of Summit County, Ohio, the Supreme Court approved the charge of the trial court as to the measure of damages which charge said (page 173 of the opinion) * * * "plaintiff is entitled to recover in this action the difference between the fair and reasonable market value of said lands for the most valuable purpose or use for which they were suitable and available in the condition they were in immediately prior to said trespass and the fair and reasonable market value of said lands for such· purpose in the condition they were immediately after said trespass."

In the instant case, the action in the Common Pleas Court was not one to appropriate lands; on the contrary it was an action to recover damages for an injury occasioned by a trespass which permanently impaired the value of the property. In such action the question of residual value was not a proper matter for the court to charge upon.

Did the court commit error in telling the jury to wholly disregard the evidence of tax value of said lands?

This question has not been raised very frequently in Ohio.

One case that permitted such evidence to go to the jury was **Toledo Ry. Co., v Toledo Elec. Co.**, 5 Ohio Circuit Reports 643 but in that case the tax valuation was a report made out by the company and admitted as a declaration against interest.

The general rule is that the assessed valuation of property is not evidence of its value for other than tax purposes. 17 A. L. R. 170; 84 A. L. R. 1485; 20 Am. Jr. Evidence section 385, page 348; 15 O. Jur., Eminent Domain, p. 895, sec. 203; 17 O. Jur., Evidence, p. 221, sec. 172, and the cases cited thereunder. The most recent cases we have found—Detroit v Christy, 316 Mich 215—25 N. W. 2nd 174 decided in December 1946 and Detroit v Ebringer et al, 316 Mich 360—25 N. W. 2nd 516, which were cases of first impression in the State of Michigan, the evidence of assessed tax value was declared admissible. A review of the authorities is given in the Christy case.

We believe the better rule to be that evidence of tax valuation is not admissible for the purpose of establishing fair market value, in the type of case we are now considering.

Did the trial court commit error in the instant case, in his statement concerning the appraisal value as set by appellee Bana in his deceased father's estate, the text of which charge is given above? In his first statement the trial court did not entirely exclude such testimony and when said court gave additional instructions on this point any wrongful impression gained was cured by his statement to consider such testimony, as a statement by the owner of his estimate of the worth of his lands. We do not find error prejudicial to the appellant in the charge on that subject.

Did the court err in admitting the testimony of non-experts as to the value of appellees lands? Two witnesses, neighbors in the vicinity, were called by appellees who, knowing said lands, gave their opinion as to the value per acre prior to the injuries complained of. Appellants objected to the introduction of such evidence, but the court permitted it to go to the jury.

"Opinions of non-expert witnesses who state, so far as practicable, the facts upon which their opinions are based, will be received on questions of values and quality," * * * 17 O. Jur. Evidence p 469 sec 376 and the cases cited thereunder.

"In all jurisdictions testimony to the value of a specific piece of property is now received, as not obnoxious to the opinion rule."

Wigmore on evidence 3rd edition 1943 section 1943 see

also 20 Am. Jur.—Evidence section 897, page 754.

Ohio has followed the general rule in this respect for in the early case of **Cleveland and Pittsburgh R. R. Co., v Ball, 5 Oh St 568** at 574 the court say:

"The general rule that the testimony of witnesses is confined to a statement of facts coming from observation, knowledge, and recollection, as distinguished from the mere opinion or inference of a witness, is a safe rule, altho subject to numerous exceptions. * * *

"* * * It is proper for a witness to describe the particulars of the injury, the manner in which the property is affected, and give his opinion as to the value of the land."

This rule has been followed in other Ohio cases to-wit **Burckhardt v Burckhardt, 42 Oh St 474** at page 502; **Railroad Co., v Schulz, 43 Oh St 270** at pages 275 and 281; **Railway Co., v Gardner, 45 Oh St 309** at 322.

We believe that the non-expert witness may testify as to the value of real property, when the witness states the facts upon which he bases his opinion altho such witness expressing on opinion does not have all inclusive information of every detail of the elements entering into the value. The submission of the testimony of such witnesses in the instant case was not prejudicial error.

The appellant claims that: the verdicts in the amount of $5,000.00 each were excessive; the trial court erred in permitting such verdicts to stand; any similarity in the claims of appellees ceased upon the showing that appellant's chemicals were deposited on their lands.

There is nothing new on this subject that we can say in this case. See **Bishop v East Ohio Gas Co., 143 Oh St 541; Park Co. v Schulte, 120 Oh St 273** at 290. The members of the court do not reach the unanimous conclusion that such verdicts are excessive.

This court finding no error prejudicial to the appellant apparent in the record affirms the judgment of the trial court.

DOYLE, PJ, and STEVENS, J, concur.