[Cite as *N. Canton v. Julius Brown, L.L.C.*, 2024-Ohio-5881.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| CITY OF NORTH CANTON | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2024CA00030 |
| JULIUS BROWN, LLC, ET AL | : |  |
|  | : |  |
| Defendants-Appellants | : | <u>OPINION</u> |


CHARACTER OF PROCEEDING: Appeal from the Stark County Court of Common Pleas, Case No. 2022CV01024


JUDGMENT: Reversed and Remanded


DATE OF JUDGMENT ENTRY: December 16, 2024


APPEARANCES:

For Plaintiff-Appellee

OWEN J. RARRIC
4775 Munson Street N.W.
Canton, OH 44735-6963

For Defendant-Appellant

JOSEPH R. SPOONSTER
1559 Corporate Woods Parkway, Ste. 250
Uniontown, OH 44685

*Gwin, P.J.*

{¶1} Appellant Julius Brown, LLC appeals from the judgment entry of the Stark County Court of Common Pleas awarding him $256,743.96, plus costs, in an eminent domain case. Appellee is the City of North Canton.

*Facts & Procedural History*

{¶2} On June 27, 2022, appellee filed a petition for appropriation against appellant, Stark County Treasurer Alexander Zumbar, and Stark County Auditor Alan Harold. The real property at issue in this case is located at 407 N. Main Street in North Canton. Appellant owns a total of 2.15 acres. Appellee determined a portion of appellant's real estate, approximately 9,921 square feet, or 0.228 acres, along the eastern and southern boundary of the property, was necessary for the widening of a roadway.

{¶3} There were two buildings on the property, a "showroom" building and a "service" building. The buildings are on separate parcels. During the pendency of the case and as permitted by law, appellee demolished the buildings.

{¶4} One day prior to trial, appellee filed a motion in limine to prevent appellant from introducing the valuation given to the property by the Stark County Auditor.

{¶5} For tax year 2021, the Stark County Auditor valued the building on Parcel Number 9200534 at $155,800. After demolition, the auditor valued the building on the same parcel at $3,000, a difference of $152,800. The auditor valued the building on Parcel Number 9200535 at $110,800. After demolition, the auditor valued the building on the same parcel at $17,100, a difference of $93,700.

{¶6} Further, for tax year 2021, the Stark County Auditor valued the total property for Parcel Number 9200535, including the building, at $293,500 and for Parcel Number

9200534, including the building, at $205,100. After the demolition of the buildings, the Auditor re-valued the property and adjusted the "total market value" to reflect the removal of the buildings. The "total market value" of the one parcel went from $293,500 to $144,900, and the "total market value" of the second parcel went from $205,100 to $37,500 after the buildings were demolished.

{¶7}  A jury trial was held from February 5, 2024, to February 8, 2024.

{¶8}  At trial, appellee presented certified appraiser Dan Miller ("Miller") as its expert, who opined the highest and best use of the property was redevelopment. Miller valued the real property at $160,000, the fixtures at $14,144, $41,856 for the temporary easement used during construction, and valued the buildings at zero. The report Miller prepared is dated August 20, 2021. Appellant presented the testimony of a Cleveland-area commercial real estate agent, Robert Yaskanich ("Yaskanich"). Yaskanich opined the buildings had value independent of the land and valued the structures at $45 per square foot.

{¶9}  During trial, appellee presented testimony that the "showroom" building on the property was built in 1922, was vacant, and was hazardous due to severe cracking, rotted beams, a leaking roof, and temporary support structures. Appellant disputed this testimony at trial.

{¶10}  Appellant attempted to introduce evidence of the auditor's valuation of the property in several ways: first, appellant identified the Stark County Auditor as a witness on his witness list and subpoenaed the auditor to testify at trial; second, counsel for appellant attempted to ask appellant on direct examination about the amount of taxes he paid prior to the demolition of the buildings and after the demolition of the buildings; and

third, counsel for appellant attempted to cross-examine Miller as to his use of the auditor's market valuation and the amount of the total taxes paid in his report.

{¶11} Initially, the trial court ruled the auditor could testify to the value. However, after adjournment so the parties could provide supplemental authority and arguments, the trial court granted the motion in limine, finding the auditor's valuation could not be used to establish market value. Additionally, the trial court did not permit appellant to cross-examine Miller as to the specific dollar amounts used by the auditor. The court did permit appellant to reference that there was a "downward change" in the auditor's assessment after the buildings were demolished. The court also permitted appellant himself to testify that his tax bill for the current year was different from the last one, without any reference to the demolition of the buildings or the actual valuation by the auditor.

{¶12} Appellant proffered the following regarding the auditor's valuation: Exhibits CC (auditor's property card), DD (auditor's value history), EE (auditor's valuation notice letter), FF (auditor's property card), GG (auditor's value history), and HH (auditor's valuation notice letter); the expected testimony of appellant in relation to the exhibits and testimony regarding the value of the buildings; the expected testimony of the Stark County Auditor in relation to the exhibits and testimony regarding the auditor's process of valuing the buildings; and the cross-examination of Miller regarding his use (or lack thereof) of the value given to the buildings by the Stark County Auditor in compiling his report and opinion of market value.

{¶13} The jury awarded appellants $160,000 for the vacant land appropriated, $14,144 for the fixtures removed, and $82,599.96 for a temporary work easement. The jury did not award any compensation for the structures (buildings) removed. The trial court

issued a final judgment entry on February 9, 2024, awarding appellant $256,743.96, plus costs.

**{¶14}** Appellant appeals the February 9, 2024, judgment entry of the Stark County Court of Common Pleas and assigns the following as error:

**{¶15}** "I. THE TRIAL COURT ERRED IN PROHIBITING JULIUS BROWN FROM INTRODUCING THE STARK COUNTY AUDITOR'S VALUATIONS AND TAX ASSESSMENTS FOR THE PURPOSE OF ESTABLISHING THE DEMOLISHED BUILDINGS HAD VALUE AND CONTINUED UTILITY.

**{¶16}** II. THE TRIAL COURT ERRED BY REFUSING TO PERMIT THE STARK COUNTY AUDITOR'S VALUATIONS AND TAX ASSESSMENTS TO BE USED FOR CROSS-EXAMINATION."

*Standard of Review & Relevancy*

**{¶17}** The admission or exclusion of evidence lies in a trial court's sound discretion "so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake County*, 58 Ohio St.3d 269 (1991); *State v. Sage*, 31 Ohio St.3d 173 (1987). Therefore, we will not disturb a trial court's evidentiary ruling unless we find the trial court abused its discretion.

**{¶18}** In general, "[a]ll relevant evidence is admissible" and "[e]vidence which is not relevant is not admissible." Evid.R. 402. Evidence Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pursuant to Evidence Rule 403, "although relevant, evidence is not

admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

I.

{¶19} In his first assignment of error, appellant contends the trial court abused its discretion in failing to permit the landowner to question the Stark County Auditor as to the auditor's tax valuation for the buildings before and after the demolition and/or in failing to permit appellant to testify as to the amount of taxes he paid prior to the demolition of the buildings and subsequent to the demolition of the buildings. We agree.

{¶20} When a parcel of land is taken by eminent domain, the measure of compensation to be awarded to the landowner is the price which would be agreed upon at a voluntary sale between an owner willing but not required to sell and a purchaser willing but not required to buy, when both are fully aware and informed of all circumstances involving the value and use of the particular property. *Sowers v. Schaeffer*, 155 Ohio St. 454 (1951). R.C. 163.14(B) provides that the jury "shall assess the compensation for the property appropriated and damages, if any, to the residue, to be paid to the owners." Further, "when a building or other structure is situated partly upon the land appropriated and partly on adjoining land so that the structure cannot be divided upon the line between such lands without manifest injury thereto, the jury, in assessing compensation to any owner of the land, shall assess the value thereof, as part of the compensation."

{¶21} An eminent domain case differs from other types of cases in a significant way that impacts our analysis in this case. Pursuant to R.C. 163.09(F), neither party has the burden of proof when determining the value of the appropriation. Rather, the trier of fact is to determine the value of the appropriated land and any damages thereto with

neither party bearing a burden of proof. *Id.* The testimony of the Stark County Auditor and/or the testimony of appellant as to the reasoning for his value, is clearly "some" proof of value, and is thus relevant evidence.

{¶22} Tax assessors in Ohio are directed by the Ohio Revised Code that property taxes must be based on the "true value" of a property. R.C. 5713.03, R.C. 5715.01(C), O.A.C. 5703-25-07. R.C. 5713.03 specifically directs that a determination of "true value" must be made considering the "buildings, structures, and improvements located thereon." See also O.A.C. 5703-25-07(B). The Ohio Supreme Court has held the "true value" of real property is considered to be the amount for which that property would sell on the open market by a willing seller to a willing buyer. *Dayton-Montgomery County Port Auth. v. Montgomery County Bd. of Revision*, 2007-Ohio-1948; see also O.A.C. 5703-25-05(A). Thus, the "true value" of a property is its fair market value. Pursuant to statute, the county auditor's assessed valuation is purportedly based on fair market value. Thus, evidence of the assessed value is both material and relevant to the ultimate issue in an eminent domain proceeding.

{¶23} This is not a case in which a city or governmental entity is arguing the tax assessment should be admissible because the taxpayer or landowner somehow "acquiesced" or "stipulated" to the value by paying taxes. Rather, this is a case in which a statute specifically provides that, in assessing compensation to an owner of land in an appropriation proceeding, the jury shall assess the value of the building or structure (R.C. 163.14(B)), and the landowner is attempting to explain why his own valuation and the evaluation of his appraiser is higher than that provided by appellee's appraiser, i.e., appellee's appraiser did not place any value on the buildings while appellant and his

appraiser did.   For years, appellant paid taxes on this assessment, and the county accepted taxes based on this assessment.

{¶24} Appellee argues the "overwhelming" weight of authority in Ohio demonstrates the tax valuation is not admissible in this case.  However, neither this Court, nor the Ohio Supreme Court, has analyzed or ruled on this issue.  Further, the cases cited by appellee have limited value to our analysis because they are distinguishable from the instant case.

{¶25}  The primary case upon which appellee relies, *Bana*, does state the "general rule is that the assessed valuation of property is not evidence of its value for other than tax purposes."  *Bana v. Pittsburgh Plate Glass Co., Columbia Chemical Division v. Same*, 76 N.E.2d 625 (9th Dist. 1947).  However, the Ninth District also specifically stated in *Bana* that the "better rule" is that evidence of tax valuation is not admissible to establish fair market value "in this type of case."  *Id.*  However, the "type of case" in *Bana* is not the same "type of case" as the instant case.  The *Bana* case was not an eminent domain case; rather, it was a tort action to recover damages caused to the property by a trespass.  Further, in *Bana*, the court actually cited to two Michigan cases holding that evidence of assessed value was admissible in eminent domain proceedings.  *Id.*

{¶26}  While the Eighth District in *Grisanti* cited the "general rule" contained in *Bana* in an eminent domain case, the court did not base its decision on this "general rule." Rather, the court found the valuation was not admissible because it was too remote in time from the date of condemnation.  *City of Cleveland v. Grisanti*, 187 N.E.2d 515 (8th Dist. 1963).  Likewise, the First District in *Jennewein* cited the "general rule" in *Bana*, but based its determination that the tax assessment was inadmissible on the fact that the value was

"too remote in time" from the date of condemnation to be admissible. *City of Cincinnati v. Jennewein*, 1978 WL 216461 (1st Dist. 1978). In this case, the tax assessment date the landowner sought to introduce via testimony from the Stark County Auditor or via himself was reasonably close in time to the effective date of Miller's appraisal. Thus, *Grisanti* and *Jennewein* are distinguishable from this case.

{¶27} The remainder of the Ohio cases cited by appellee in support of the *Bana* rule are not eminent domain cases. *Ohio Cas. Ins. Co. v. D&J Distributing & Manufacturing, Inc.*, 2009-Ohio-3806 (6th Dist.) (subrogation action); *In re Bloch's Estate*, 107 Ohio App. 545 (1st Dist. 1958) (action to determine value of real estate in an estate case); *Tarrify Properties, LLC v. Cuyahoga County*, 37 F.4th 1101 (6th Cir. 2022) (question is whether trial court should have permitted tax valuations to be considered in resolving a class-action certification motion; finding no class certification because fair market value will be different for each property; also auditor's valuations are too remote in time to be considered for class certification).

{¶28} Additionally, the majority of these cases are over forty years old. While there may have been a widespread belief about the inherent unreliability of tax assessments as a criterion for determining "true" or fair market value forty years ago, the modernization of the auditor's methods and the fact that there are now uniform rules and methods of valuing and assessing real property as promulgated by the Ohio tax commissioner have made tax assessments not inherently unreliable. A key principle in eminent domain actions, as contained in the Fifth Amendment, is "just compensation," which "derives as much content from the basic equitable principles of fairness * * * as it does from technical concepts of property law." *United States v. Fuller*, 409 U.S. 488

(1973). Under the facts in this case, to exclude relevant evidence offered by the landowner that goes to the heart of the jury's sole function in an eminent domain case (i.e. determination of the fair market value of the land) does not comport with the concept of fairness to the landowner.

{¶29} The primary reason appellee advances as to why the evidence should be inadmissible is that the evidence is unreliable. However, this goes to the weight of the evidence, which is a matter to be determined by the trier of fact. The testimony of the Stark County Auditor would be subject to cross-examination, as would the testimony of appellant that his tax bill decreased by a certain amount after the demolition of the buildings. We additionally note that when a landowner seeks to introduce his own testimony or the testimony of the auditor regarding the tax valuation, this evidence is not determinative of the fair market value and there is no "presumption" attached to it; rather, it is merely one piece of evidence or factor a jury can consider in ascertaining the fair market value of the lands taken.

{¶30} Further, specifically as to the testimony sought to be elicited via appellant, we find the trial court committed error in failing to permit appellant to testify to the amount his taxes went down directly due to the demolition of the buildings. "Under the owner-opinion rule, an owner of real property, by virtue of his ownership and without qualification as an expert, is competent to testify to his property's fair market value. * * * The rule is based on the presumption that the owner of real estate * * * possesses sufficient acquaintance with it to estimate the value of the property, and his estimate is therefore received although his knowledge on the subject is not such as would qualify him to testify if he were not the owner." *City of Cincinnati v. Banks*, 143 Ohio App.3d 272 (1st Dist.).

Because appellant is a competent witness to testify as to the value and use of his property, he is also permitted to testify as to the underlying factors which serve as the basis for his opinion in order to lend credibility to his testimony. *Proctor v. Bader*, 2004-Ohio-4435 (5th Dist.).

{¶31} We disagree with the trial court's finding that this evidence's probative value is outweighed by the danger of unfair prejudice. As detailed above, this is a unique situation in which neither party has the burden of proof. The auditor's value is what taxpayers pay taxes on each year, and the process by which an auditor calculates this number is prescribed by the Ohio Revised Code and the Ohio Administrative Code. Further, any questions as to the reliability of the valuation, such as whether the auditor viewed the interior of the structures, are subject to cross-examination. Additionally, it is the landowner who is attempting to introduce the evidence, which he is entitled to do because he can introduce facts which serve as the basis of his opinion of value to lend credibility to his testimony. Finally, the auditor's value is not final and determinative of fair market value in an appropriation proceeding. Rather, it is one factor the jury can consider.

{¶32} Appellant's first assignment of error is sustained.

II.

{¶33} In his second assignment of error, appellant argues the trial court abused its discretion in failing to let appellant cross-examine Miller as to the auditor's valuation. During cross-examination, appellant sought to ask Miller whether he considered the property tax amount and auditor's valuation in his appraisal. The trial court did not allow appellant to cross-examine Miller on why he did not value the buildings and/or why he did not consider the tax value as assessed by the auditor in his valuation.

{¶34} Miller explained during his testimony that there are several components to determine the fair market value of the land: buildings, structures, land, and site improvements. While Miller assigned value to the land and fixtures, he did not assign any value to the buildings on the land. Miller stated this was because the highest and best use of the land is demolition of the buildings for commercial redevelopment. Miller further testified the buildings should be assigned no value because of their L-shaped design and the functional inadequacy of the buildings (structural issues, rust, peeling paint). In his valuation report, Miller has a section entitled "County Market Value and Real Estate Taxes," which contains the parcel numbers for each parcel, the auditor's market value for each parcel, and the total real estate taxes appellant paid for tax year 2020 on all of the parcels. The "County Market Value and Real Estate Taxes" section is in Part Two of Miller's report, which Miller called "Part Two – Factual Data – Before Acquisition."

{¶35} Evidence Rule 703 ("Bases of Opinion Testimony by Experts") provides, "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Evidence Rule 705 ("Disclosure of Facts or Data Underlying Expert Opinion") states, "the expert may testify in terms of opinion or inference and give the expert's reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."

{¶36} In this case, it is clear from the actual title of the section under which Miller placed the auditor's market value and real estate tax that he utilized this information as "facts or data" upon which he based his opinion of the value of the land prior to the condemnation. Pursuant to Evidence Rule 705, the line of inquiry by appellant on cross-

examination should have been allowed to determine whether the auditor's valuation and/or real estate tax amount aided Miller in arriving at his determination of market value or why Miller rejected the auditor's valuation in his determination of market value that was lower than the auditor's valuation.

{¶37} Appellant's second assignment of error is sustained.

*Harmless Error*

{¶38} Appellee argues that, even if the trial court improperly excluded the auditor's tax valuation evidence, the exclusion of the evidence was harmless error for two reasons: (1) appellant failed to present a certified appraiser as required by R.C. 163.06(B) and (2) the jury was required to find the highest and best use of the property, which is what the jury did in this case.

{¶39} "An improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice." *Beard v. Meridia Huron Hospital*, 2005-Ohio-4787; Civil Rule 61. To determine if a ruling affects the substantial rights of the adverse party or is inconsistent with substantial justice, "a reviewing court must not only weigh the prejudicial effects of those errors but also determine that, if those errors had not occurred, the jury * * * would probably have made the same decision." *Id.*

{¶40} We find the harmless error doctrine does not apply in this case. First, simply because appellant was entitled to his own appraisal in which the appraiser was not allowed to use or reference the auditor's tax valuation does not cure the problem. Additionally, appellant did present an appraiser who testified at trial. R.C. 163.06(B)(1) provides that, if structures are removed prior to trial, the court shall, "order appraisals to be made by

three persons, one to be named by the owner, one by the county auditor, and one by the agency." Appellee contends that since Yaskanich was not a "certified appraiser," and he was merely a "real estate appraiser," his appraisal did not comply with the statute. We disagree. R.C. 163.06(B)(1) does not define the word "appraisal," and there is no overriding definition of "appraisal" in R.C. 163.01, the definition section of the statute. Black's Law Dictionary defines "appraisal" as "determination of what constitutes a fair price for something or how its condition can be fairly stated; the act of assessing the worth, value, or condition of something." (11th Ed. 2019). Yaskanich's appraisal would fall under this definition. Additionally, in an eminent domain case, the owner is entitled to testify to value. Because appellant attempted to introduce this evidence through his own testimony as the landowner makes it irrelevant whether appellant submitted an appraisal.

{¶41} Further, as evidenced by the jury instructions for eminent domain cases, the concepts of "fair market value" and "highest and best use" are two separate concepts. OJI CV Section 609.05. Fair market value is the amount of money which could be obtained on the market at a voluntary sale of the property, considering the location, surrounding area, quality and general condition of the premises, the improvements on the premises, and everything that adds or detracts from the value of the property. *Id.* The concept of "highest and best use" is distinct from a fair market value determination and provides a "property must be valued at its worth for the most valuable use which it may reasonably, lawfully, and practically be used." *Id.* Highest and best use is one element in determining value, but it is not the only element. Accordingly, the fact that the jury made a "highest and best use" determination does not render the lack of inclusion of the auditor's tax valuation in the fair market value determination harmless.

**{¶42}** Here, the auditor's tax valuation for the buildings prior to and after the demolition was a difference of over $200,000. Similarly, the auditor's tax valuation for the two parcels the buildings were on prior to and after the demolition of the buildings was a difference of over $300,000. Given the large disparity between the numbers pre-demolition and post-demolition, and what the jury actually awarded appellant for the buildings ($0), we cannot conclude that, but for the errors, the jury "would probably" have made the same decision.

**{¶43}** Based on the foregoing, appellant's assignments of error are sustained.

**{¶44}** The February 9, 2024, judgment entry of the Stark County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.

By Gwin, P.J.,

Wise, J., and

King, J., concur